AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original    ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
Central District of California





United States of America

v.

JAVIER JESUS CORDOZO ARAUJO,
INGRID CAROLINA MEDINA,
GLADYS CRUZ NAVARRO, and
GUADALUPE DELCRISTO MARTINEZ,

Defendants

Case No. 2:25-mj-02315-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of April 16, 2025 in the county of Los Angeles in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 371 | Conspiracy To Transport, Transmit, Or Transfer At Least $5,000 Of Stolen Money In Interstate Or Foreign Commerce |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/ Wyatt Haccou
Complainant's signature

Wyatt Haccou, Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: 04/18/2025

/s/ Autumn D. Spaeth
Judge's signature

City and state: Santa Ana, California

Honorable Autumn D. Spaeth, U.S. Magistrate Judge
Printed name and title

AUSA: Jena A. MacCabe (x5046)

**AFFIDAVIT**

I, Wyatt Haccou, being duly sworn, declare and state as follows:

## I.   INTRODUCTION

1.  I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (the "ATF") in the Los Angeles Field Division, Santa Ana Field Office, and have been employed by the ATF since December 2021.  I have assisted in numerous investigations involving criminal street gangs, possession of firearms by prohibited persons, possession of stolen firearms, possession of machineguns, the illegal distribution of firearms, burglaries, robberies, carjackings, and other violent crimes.  I have been involved with numerous serial robbery investigations involving a suspect or suspects committing multiple robberies, most of which were armed, of various businesses over a short period of time.  Currently, I am assigned to the ATF Orange County Violent Crime Task Force ("OCVCTF") based in Orange County, California.  OCVCTF is dedicated to identifying, tracking, and apprehending armed violent offenders committing criminal violations, to include but not limited to violations of Hobbs Act robbery and other firearm-related violations.

2.  I received training during the course of my employment as an ATF Special Agent in various topics, to include but not limited to: robberies affecting interstate commerce, interview techniques, illegal trafficking of firearms, the utilization of informants, the activities of criminal street gangs, asset forfeiture, and conducting surveillance and wire interceptions. Through these investigations, my training and experience, and

1

conversations with other experienced agents and law enforcement personnel, I have become familiar with the methods used by individuals to plan and commit robberies; to acquire, smuggle, safeguard, and store firearms; and to distribute firearms. I am also familiar with how controlled substances are imported, manufactured, distributed, and sold. I have become familiar with the schemes of individuals engaged in the illegal importation, smuggling, manufacturing, and sales of firearms and controlled substances.

3. In the course of the cases I investigate or otherwise participate in, I routinely use cellular technology and records, such as cell phone location information, cell site simulators, and call detail records to obtain evidence of conspiracies to commit robberies, burglaries, carjackings, and the trafficking of firearms and controlled substances.

## II. PURPOSE OF AFFIDAVIT

4. This affidavit is made in support of a criminal complaint against and arrest warrants for Javier Jesus Cordozo ARAUJO ("ARAUJO"), Ingrid Carolina MEDINA ("MEDINA"), Gladys Cruz NAVARRO ("NAVARRO"), and Guadalupe Delcristo MARTINEZ ("MARTINEZ"), for a violation of 18 U.S.C. § 371 (conspiracy to transport, transmit, or transfer at least $5,000 of stolen money in interstate or foreign commerce).

5. The facts set forth in this affidavit are based upon information obtained from victim and suspect interviews, personal surveillance, and my training and experience. This affidavit is intended to show merely that there is sufficient

probable cause for the requested complaint and warrants and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only, all dates are on or about, and all amounts are approximate.

### III. SUMMARY OF PROBABLE CAUSE

6. On April 16, 2025, the ATF OCVCTF surveilled ARAUJO, MEDINA, NAVARRO, and MARTINEZ in Los Angeles, California. During this surveillance, ATF OCVCTF observed the aforementioned suspects travel to various banking institutions throughout Los Angeles County driving a gray Chevrolet Equinox with assigned California license plate 6XOV823. Later in the surveillance, ATF OCVCTF personnel observed the suspect vehicle follow a victim from a Bank of America to a 76 gas station in Los Angeles, California. The suspects subsequently took $10,000 from the center console of the victim's vehicle before leaving the area. ATF OCVCTF followed the suspect vehicle and apprehended the aforementioned suspects. A custodial, Mirandized interview was conducted for the aforementioned suspects, and ARAUJO confessed to the theft. The victim later arrived at the arrest location and identified some of the suspects involved.

7. As set forth below, the following evidence connects ARAUJO, MEDINA, NAVARRO, and MARTINEZ to the theft: (1) ATF OCVCTF members observed the suspects commit the theft; (2) the money stolen from the victim was recovered from MARTINEZ; (3)

3

ARAUJO admitted to the theft; and (4) the victim identified some of the suspects involved from an in-field show up.

### IV. STATEMENT OF PROBABLE CAUSE

#### A.   Investigation

8.   In March 2025, the ATF OCVCTF began investigating the theft of a $100,000 Rolex watch from the vehicle of an individual who had been shopping at a jewelry store in Orange County, California just prior to the theft. During this investigation, OCVCTF investigators obtained and reviewed surveillance video from the jewelry store showing NAVARRO[1] approaching the victim's vehicle parked in front of the jewelry store and walking to the front of the jewelry store appearing to look inside the store while the victim was shopping. NAVARRO is also seen on surveillance video leaving the parking lot in a white Kia sedan, which OCVCTF later observed ARAUJO driving with NAVARRO as a passenger to a grocery store in Los Angeles.

9.   On April 16, 2025, ATF OCVCTF personnel conducted surveillance of ARAUJO, MEDINA, NAVARRO, and MARTINEZ as part of its ongoing investigation related to distraction thefts, like of the Rolex, which occurred throughout Southern California. The ATF OCVCTF identified a gray Chevrolet Equinox with assigned California license plate 6XOV823, as the vehicle used by the suspects. ATF OCVCTF personnel observed the aforementioned suspects exit an Olive Garden restaurant before traveling in the

---

[1] NAVARRO was shown a still image of the jewelry store surveillance video by TFO Prewett during her Mirandized interview, and NAVARRO admitted that she was the individual in that image. I have reviewed the video and still image and am also able to identify NAVARRO.

4

suspect vehicle to a Bank of America, located at 8501 West Pico Boulevard, Los Angeles, California 90035. ATF OCVCTF personnel observed NAVARRO standing on the northwest corner of West Pico Boulevard and La Cienega Boulevard and appearing to be watching individuals enter and exit the bank.[2] A few minutes later, ATF OCVCTF personnel observed NAVARRO enter back into the suspect vehicle, before leaving the area. The suspect vehicle appeared to be following a victim as they left the aforementioned bank. The suspect vehicle followed the victim vehicle for several minutes throughout Los Angeles, California; however, no incident occurred.

10. At approximately 3:30 P.M., I observed the suspect vehicle arrive in the area of a Bank of America, located at 1715 North Vermont Avenue, California 90027. I observed the suspect vehicle park north of the bank on Kingswell Avenue facing westbound. I later observed MARTINEZ and NAVARRO walking on the southwest corner of Prospect Avenue and North Vermont Avenue. MARTINEZ and NAVARRO quickly entered the suspect vehicle, which traveled at high rates of speed westbound on Hollywood Boulevard and appeared to be following a victim driving a black Chevrolet Suburban.

11. ATF OCVCTF maintained mobile surveillance of the suspect vehicle until it arrived near a 76 gas station, located at 4600 Melrose Avenue, Los Angeles, California 90029. I also observed the victim Chevrolet Suburban vehicle parked at the

---

[2] Based on my training, experience, and participation in this investigation, I believe she was scouting for victims to steal from.

fuel pump closest to the Food Mart convenience store. As the victim was fueling his vehicle, ATF OCVCTF personnel observed MEDINA and NAVARRO approach the victim who was sitting in the driver's seat of his vehicle. MEDINA and NAVARRO were later observed returning to the suspect vehicle, which was parked south of the gas station on Normandie Avenue. The suspect vehicle was then observed driving at high rates of speed southbound on Normandie Avenue. As the suspect vehicle left the area, I observed the victim driving his vehicle eastbound on Melrose Avenue until he made an abrupt U-turn.[3] ATF OCVCTF contacted the victim and confirmed that he had $10,000 stolen from him.

B.  **Arrest of ARAUJO, MEDINA, NAVARRO, and MARTINEZ**

12. ATF OCVCTF personnel maintained mobile surveillance of the suspect vehicle and observed erratic and unusual behavior. The suspect vehicle was driving at high rates of speeds and driving through minor streets, cutting through residential neighborhoods.[4]

13. The suspect vehicle eventually arrived in a residential neighborhood, located at 618 South Van Ness Avenue,

---

[3] Based on my training, experience, and participation in this investigation, it appeared that the victim was returning to the gas station in a hurry as if something was missing or stolen.

[4] Based on my training, experience, and participation in this investigation, this behavior appeared to be similar to counter surveillance which is a method suspects use when trying to lose or detect law enforcement presence after a crime occurred.

Los Angeles, California 90005.[5]  ATF OCVCTF personnel converged on the suspect vehicle utilizing their lights and sirens, announcing themselves as law enforcement.  During that time, MEDINA and MARTINEZ had already exited the vehicle and began to flee from the vehicle, but they were apprehended.  ARAUJO and NAVARRO subsequently exited the vehicle and were arrested for the theft.  Based on a search incident to arrest, ATF OCVCTF personnel recovered $10,000 in U.S. currency inside MARTINEZ's underwear.[6]



---

[5] The distance from the 76 gas station where the theft occurred was approximately 2.3 miles away from the arrest location.

[6] This was the exact amount of money stolen from the victim from the 76 gas station.

### C. Interview of ARAUJO

14. After being <u>Mirandized</u>, ARAUJO advised investigators that he is from Venezuela and has been living in California for the past five months. Prior to this, ARAUJO stated that he was living in New York. While ARAUJO was living in New York, he was arrested for being in possession of a false identification card. ARAUJO initially stated that he lived at 15015 Mercy Street, Gardena, California. However, he later acknowledged that he resided at 1445 South Cloverdale Avenue, Apartment #9, Los Angeles, California. ARAUJO stated that he usually commits the types of crimes he was arrested for on the date of this interview, approximately two to three times a month. ARAUJO advised investigators that he sends stolen U.S. currency to family and friends in Venezuela because one U.S. dollar is equivalent to $1,000 Venezuelan dollars. When ARAUJO sends money, he sends between $100 to $300 at a time. ARAUJO stated that had he not been caught on today's date, he would have sent $1,000 to individuals in Venezuela. ARAUJO admitted to being the driver of the vehicle. Additionally, during the interview, ARAUJO confessed to another distraction theft under investigation by the ATF OCVCTF, namely, the theft described above of the luxury Rolex watch valued at approximately $100,000.

### D. Interview of MEDINA

15. After being <u>Mirandized</u>, MEDINA advised investigators that she did not want to speak to investigators.

8

### E. Interview of NAVARRO

16. After being Mirandized, NAVARRO advised investigators that her name was "Yolanda Romero"[7] and that she sends stolen U.S. currency to her son who lives in Colombia. NAVARRO stated that she normally sends $100 at a time.

### F. Interview of MARTINEZ

17. After being Mirandized, MARTINEZ declined to answer questions; however, as part of providing biographical information in the booking process, MARTINEZ identified himself to investigators as "Tuffy Alexander Dajud Bernal"[8] with a date of birth of December 2, 1975. MARTINEZ advised investigators that he was born in Colombia but lived in Mexico City for last several years.

### G. In-Field Show Up

18. ATF OCVCTF personnel contacted the victim from the theft at the 76 gas station mentioned herein. The victim participated in an in-field show up in efforts to identify the suspects who committed the theft. The victim advised investigators that he did not see anyone take his money. The victim was shown MEDINA and advised me that he did not think she was involved; however, he advised that he was 70 percent sure. The victim later advised that he remembered the black shirt MEDINA was wearing. The victim remembered that MEDINA

---

[7] A query of NAVARRO's fingerprint returns confirmed that her real name is NAVARRO and not the fake name she provided, "Yolanda Romero."

[8] A query of MARTINEZ's fingerprint returns confirmed that his real name is MARTINEZ and not the fake name he provided, "Tuffy Alexander Dajud Bernal."

approached him at the 76 gas station and was asking him questions.

19. The victim was also shown ARAUJO and NAVARRO. The victim was unable to identify them. However, when investigators showed the victim MARTINEZ, the victim advised me that he remembered seeing MARTINEZ at the Bank of America. The victim remembered MARTINEZ wearing a white shirt standing in line inside the Bank of America. The victim advised me that MARTINEZ was standing in front of him in the Bank of America. The victim told MARTINEZ that it was his turn to be next to which MARTINEZ told him, "No, no, I will wait." The victim was 90 percent sure that MARTINEZ was the man inside the bank and advised me that he recognized his face.

### H. Search Warrant Execution at ARAUJO's Residence

20. Subsequent to the suspects' arrests, a State of California search warrant was executed at the residence where ARAUJO said he lived -- 1445 South Cloverdale Avenue, Apartment 9, Los Angeles, California. During the search, several passports and identification cards were located for ARAUJO and NAVARRO in different names. A Wells Fargo empty money bag and a Bank of America empty money bag were also located.

Additionally, a bag full of homemade tire deflation devices were located.[9]





---

[9] The same type of homemade tire deflation device was located on ARAUJO and MARTINEZ during a search incident to arrest. On March 26, 2025, the ATF OCVCTF also observed ARAUJO using a tire deflation device on another victim vehicle where he successfully deflated the victim's vehicle in Westminster, California. Based on my training, experience, and participation in this investigation, I know that thieves sometimes deflate tires to complete a distraction theft.



### I. Criminal History for ARAUJO

21. ARAUJO has no criminal history; however, a law enforcement database query revealed that ARAUJO's country of birth is Venezuela, he has an Alien number 233 420 463/FBI number 3582N5D51, and he applied for temporary protective status on April 11, 2025.

### J. Criminal History for MEDINA

22. Based on a review of MEDINA's criminal history, MEDINA had several felony convictions in New York for Grand Larceny and Criminal in Possession of Stolen Property. MEDINA also had misdemeanor convictions for Criminal Mischief: Reckless Property Damage. Additionally, a law enforcement database query revealed that MEDINA's country of birth is Colombia, she has an Alien number 220 235 827/FBI number RTEE65CP1, and on August 18, 2021, she was arrested by U.S. Border Patrol and processed for expedited removal.

### K. Criminal History for NAVARRO

23. Based on a review of NAVARRO's criminal history, NAVARRO was previously arrested on May 10, 2022, by U.S. Customs Border Protection for an immigration violation. Additionally, a law enforcement database query revealed that NAVARRO's country of birth is Colombia, and she has an Alien number 240 873 791/FBI number 790694TB4.

### L. Criminal History for MARTINEZ

24. Based on a review of MARTINEZ's criminal history, MARTINEZ had prior arrests for Conspiracy to Commit Crime and Burglary.

### M. Background on Crime Tourism

25. Based on my training and experience and conversations with other law enforcement officers, I know that South American Theft Groups, a designated transnational criminal organization, is comprised of citizens from countries such as Chile, Colombia, Peru, and Venezuela. These groups commonly exploit the U.S. immigration system and make fraudulent claims to enter the United States. Another term used to describe this is "Crime Tourism." Members of Crime Tourism crews live nomadic lives to avoid arrest by law enforcement. Crime Tourism crews are known to use counterfeit identification documents and aliases to disguise their identity and criminal history during encounters with law enforcement.

## V. CONCLUSION

26. For all the reasons described above, there is probable cause to believe that ARAUJO, MEDINA, NAVARRO, and MARTINEZ have committed a violation of 18 U.S.C. § 371 (conspiracy to transport, transmit, or transfer at least $5,000 of stolen money in interstate or foreign commerce).

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this __18__ day of April, 2025.

_____/s/ Autumn D. Spaeth_____
HONORABLE AUTUMN D. SPAETH
UNITED STATES MAGISTRATE JUDGE

14